IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Andre Green, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-2871 |
| | ) | |
| Sutton Ford Inc., | ) | **Jury Trial Requested** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES the Plaintiff Andre Green ("Plaintiff" or "Mr. Green"), by and through his undersigned attorneys, and for his Complaint against the Defendant Sutton Ford Inc. ("Defendant"), states as follows:

### NATURE OF ACTION

1. This is a failure to hire and retaliation case against Defendant for illegally refusing to hire Plaintiff because he was improperly "regarded as" disabled by Defendant in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* (the "ADA"), and for illegally retaliating against him by failing to hire him because he requested time off under the Family and Medical Leave Act, 29 U.S.C. 2601, et seq. (the "FMLA"). Plaintiff also brings an action for promissory estoppel under Illinois common law.

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which states that federal courts have primary jurisdiction over actions that arise under the laws of the United States. This Court has supplemental jurisdiction over all state and common law claims pursuant to 28 U.S.C. § 1367.

1

3. Venue lies in the Northern District of Illinois because Plaintiff is a resident of this District, Defendant was engaged in business in this District, and the events giving rise to the claims alleged in this Complaint occurred in this District.

## PARTIES

4. Plaintiff Andre Green is a resident of Richton Park, Illinois.

5. Defendant is a new and used car dealership located in Matteson, Illinois and owned by Nathaniel (Nate) Sutton.

6. At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" as defined under the ADA (42 U.S.C §12111) in that Defendant had 15 or more employees in Illinois for each working day in each of the 20 or more calendar weeks during the relevant calendar years.

7. At all relevant times, Plaintiff was qualified to perform the job duties of his position with Defendant and the position to which he applied at Defendant and did in fact satisfactorily performed his job duties with Defendant while employed there.

8. At all relevant times, Defendant was an "employer" and Plaintiff was an "eligible employee" as defined under the FMLA (29 U.S.C § 2611) in that Defendant was and is engaged in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks within 75 miles of its Matteson, Illinois location and Plaintiff was employed by Defendant for at least 12 months at the location in Matteson, Illinois and worked at least 1,250 hours during the 12 months before he requested leave under the FMLA.

## PROCEDURAL BACKGROUND

9. On December 10, 2018, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation. A true and correct copy of that charge is attached hereto as Exhibit 1.

10. On March 7, 2019, the EEOC issued Plaintiff a notice of right to sue, which entitled him to institute a civil action within 90 days of the date of receipt thereof. A true and correct copy of that notice is attached hereto as Exhibit 2.

11. Plaintiff has filed this lawsuit within 90 days of receiving the EEOC's notice of right to sue, thereby fulfilling all conditions precedent to the institution of his claims under the ADA.

## FACTS

*Background*

12. As background, Mr. Green started working for Defendant roughly ten years ago. In 2016, Mr. Green suffered end-stage renal disease based on his Type 1 diabetic status, which required Mr. Green to undergo dialysis. As a result, Mr. Green began peritoneal dialysis at home seven days a week, which allowed him to continue working daily. This information was shared with Nathaniel Sutton via Linda Gibb and Emma Williams. To accommodate schedule flexibility, Mr. Green asked Defendant for FLMA forms so that he could fill them out. Yet Ms. Gibb and Ms. Williams told Mr. Green that Mr. Sutton expressly said: "No need for FMLA to be put in place."

13. After Mr. Green met with Mr. Sutton to assure this was correct, Mr. Sutton himself verified that there was no need for FLMA to be put into place as he personally

3

promised Mr. Green a flexible schedule and shared that information with floor managers. In other words, although Mr. Green requested FMLA forms from the company, Mr. Green and Defendant staff refused to provide the forms to him.

14. Subsequently, in or around November 2017, Mr. Green began having weakness in his feet and legs, which was a condition brought about by Mr. Green's diabetic condition and which caused him difficulty walking. Therefore, Mr. Green was placed on short-term disability from November 2017 through early 2018. As before, Mr. Sutton personally promised Mr. Green: "Take as much time as you need to address these medical issues without making a formal FMLA request to do so. Don't worry your job is here." It was clear that Mr. Sutton was very reluctant to provide any FMLA leave to Plaintiff.

15. Then, in or around May 2018, Mr. and Mrs. Green met with Mr. Sutton to talk about issues related to Mr. Green's 401K. Mr. Green was told that he would have to resign to take funds from his 401K. Mr. Sutton assured Mr. Green that, while on the books it would be a voluntary resignation, it would not change his job status in reality as Mr. Sutton specifically and expressly promised Green that he (Sutton) would rehire him "when your doctor clears you." Mr. Sutton's exact words to Mr. Green were: "***You always have a job here when your doctor clears you***." Accordingly, Mr. Green resigned in reliance on Mr. Sutton's promise that Defendant would hire him back "when [his] doctor clear[ed] [him]." Mr. Green never would have resigned had Mr. Sutton not made that express and unequivocal promise. Mr. Green's wife was physically present during this meeting where Mr. Sutton made this unequivocal promise to re-employ Mr. Green once the "doctor clear[ed] [him]."

4

16. A few months after resigning, Mr. Green got better and secured a July 13, 2018 doctor's note clearing him to return to his previous part-time light-duty sales consultant position (which had not been filled yet) as of August 13, 2018. The note read: "To Whom It May Concern: The patient [Andre Green] may return to work part time light duty on August 13, 2018. If you need additional information, please feel free to contact our office. . . . Sincerely, Dr. Dwayne Buchanan M.D."

17. Upon receiving the doctor's note, Mr. Green immediately notified Mr. Sutton of the note and asked when he could resume working for Defendant. In response, Mr. Sutton asked Mr. Green to come to the dealership to discuss Mr. Green's re-employment and to bring his doctor's note with him.

18. After some scheduling issues, that meeting happened on September 25, 2018. At the September 25, 2018 meeting, Mr. Green handed the doctor's note to Mr. Sutton. Mr. Sutton peered at the note and then looked away into space, as if he were pondering the re-hiring of Mr. Green. Mr. Sutton did not say "we already filled your position" or something to that effect. Rather, Mr. Sutton all but conceded that the only reason that he was not hiring Mr. Green back was because he (Sutton) regarded Mr. Green as still too disabled to reclaim his old position. Mr. Sutton shook his head and, despite a doctor's note completely clearing Mr. Green to come back to work in his old (and unfilled) position, said verbatim: "***You're still too sick. You'd be a liability to the company. Come back once you get a [new] kidney.***"

19. As a result of Defendant's conduct, Plaintiff has suffered loss of wages and benefits, as well as severe emotional distress.

5

## COUNT I
## ADA – Refusal to Hire

20. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

21. At all relevant times, Plaintiff was regarded by Defendant as having a "disability," as that term is defined in the ADA, as a result of his renal disease.

22. At all relevant times, Plaintiff was regarded by Defendant as having a "disability" and as record of such impairment, as that term is defined in the ADA, as a result of his renal disease.

23. Plaintiff was considered by Defendant as having a physical or mental impairment that substantially limited one or more of his major life activities.

24. Plaintiff was qualified to perform the essential functions of his job at Defendant as well as the job to which he applied and was rejected by Defendant with or without a reasonable accommodation.

25. Similarly-situated employees at Defendant who were not regarded by Defendant as having a disability were treated more favorably than Plaintiff, as they were not refused work at their position because of a perceived disability.

26. Defendant refused to hire Plaintiff because Defendant regarded Plaintiff as being disabled.

27. Defendant refused to hire Plaintiff because Defendant regarded Plaintiff as having a past record of being disabled.

28. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights, Plaintiff has suffered great mental anguish, humiliation,

degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff prays that this Court:

a. Enter judgment in favor of Plaintiff and against Defendant for violation of Plaintiff's rights under the ADA,

b. Declare that the actions of Defendant were discriminatory,

c. Award Plaintiff compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress,

d. Award Plaintiff punitive damages in such amount as the Court deems proper,

e. Award Plaintiff his costs, attorneys' fees and non-taxable expenses in this action, and

f. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## COUNT II
### Retaliation in Violation of Family and Medical Leave Act

29. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

30. Plaintiff requested FMLA leave in November 2017 concerning his renal disease.

31. On or about September 25, 2018, Defendant refused to hire Plaintiff in retaliation for Plaintiff previously requesting leave under the FMLA.

32. As a consequence of Defendant's actions, Plaintiff has suffered and continues to suffer damages in the form of lost wages, benefits and compensation plus interest.

33. Pursuant to the FMLA, Plaintiff is also entitled to recover liquidated damages and his attorneys' fees in pursuing this claim.

WHEREFORE, the Plaintiff, respectfully requests this Honorable Court enter Judgment for the Plaintiff and award Plaintiff the following damages:

  a. Back wages, health insurance coverage, benefits and other compensation lost as a result of Defendant's violation of the FMLA;

  b. Front pay;

  c. Interest;

  d. Statutory damages in the maximum amount permitted by the Family Medical Leave Act; and

  e. Attorneys' fees and costs in pursuing his claim.

## COUNT III
### Promissory Estoppel

34. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

35. In or around May 2018, Plaintiff was contemplating resigning his position at Defendant and had a discussion with Mr. Sutton about that.

36. Mr. Sutton unequivocally promised Mr. Green: "You always have a job here when your doctor clears you."

37. Plaintiff resigned in reliance on Mr. Sutton's promise that Defendant would hire him back "when [his] doctor clear[ed] [him]."

38. Plaintiff's reliance on Mr. Sutton's promise was to his detriment, i.e., he was not given his job back when his doctor cleared him to return to work.

39. Plaintiff never would have resigned had Mr. Sutton not made that express and unequivocal promise.

40. As a direct and proximate result of the above, Plaintiff has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff prays that this Court:

    a. Enter judgment in favor of Plaintiff and against Defendant on his promissory estoppel claim,

    b. Award Plaintiff compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and

    c. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues herein.

                                                Respectfully submitted,
                                                ANDRE GREEN

                                                By: /s/ Michael A. Faccenda
                                                     One of His Attorneys

Michael A. Faccenda
901 West Hillgrove Avenue
La Grange, IL 60525
Phone: 708-497-3077
Email: maf@connorsfaccenda.com
ARDC No. 6239317

                                                By: /s/ Christopher P. Connors
                                                     One of His Attorneys

Christopher P. Connors
901 West Hillgrove Avenue
La Grange, IL 60525
Phone: 312-994-2411
Email: cpc@connorsfaccenda.com
ARDC No. 6269559

# Exhibit 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA (IDHR)<br>☑ EEOC | 440-2019-00145 |

Illinois Department of Human Rights (IDHR) and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Andre Green | 708-595-9213 | 3/1/1962 |

**Street Address:** 22057 Spring Lane, Richton Park, IL 60471

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Sutton Ford Inc. (hereinafter, "Sutton") | | (708) 720-8000 |

**Street Address:** 21315 Central Ave, Matteson, IL 60443

RECEIVED EEOC
DEC 1 0 2018
CHICAGO DISTRICT OFFICE

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☑ RETALIATION ☐ AGE ☑ DISABILITY ☐ GENETIC INFORMATION
☑ OTHER (Specify) Failure to hire

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest / Latest: September 25, 2018
☑ CONTINUING ACTION

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):

I worked for Sutton, which is a car dealership, for roughly ten years as a sales consultant until in or around May 2018. During this time, I had several medical issues, including end-stage renal disease based on my Type 1 diabetic status, which caused me difficulty walking at the time and led Sutton owner, Nate Sutton, to convert my position to the position of part-time light-duty sales consultant position. Mr. Sutton promised to keep my job open for me if I resigned temporarily to draw down on my 401K. His exact words were: "You always have a job here when your doctor clears you." Thus, Mr. Sutton knew of all my medical issues and knew that I was actively seeking treatment to return to be able to return to my former position of part-time light-duty sales consultant position as soon as my doctor cleared me to return to work. On July 13, 2018, I received doctor's note clearing me to return to work at my previous part-time light-duty sales consultant position. Sutton had not filled this position yet. I immediately notified Mr. Sutton of the doctor's note and asked when I could resume working for Sutton. In response, Mr. Sutton asked me to come to the dealership to discuss my re-employment and to bring my doctor's note with me. After some scheduling issues, that meeting happened on September 25, 2018. At the September 25, 2018 meeting, I handed the doctor's note to Mr. Sutton. Mr. Sutton peered at the note and then looked away into space, as if he were pondering my re-hiring. Mr. Sutton did not say "we already filled your position" or something to that effect. Rather, Mr. Sutton all but conceded that the only reason that he wasn't hiring me back was because he "regarded" me as still too disabled to reclaim my old position. Mr. Sutton shook his head and, despite a doctor's note completely clearing me to come back to work in my old (and unfilled) position, said: "You're still too sick. You'd be a liability to the company. Come back once you get a [new] kidney." These outrageous remarks are clear evidence that Mr. Sutton refused to hire me because I was "regarded as" still being disabled.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 12/7/2018
Charging Party Signature

**NOTARY** – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

# Exhibit 2

EEOC Form 161-B (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Andre Green | From: | Chicago District Office |
|---|---|---|---|
| | c/o Christopher P. Connors<br>CONNORS & FACCENDA<br>901 West Hillgrove Avenue<br>La Grange, IL 60525 | | 500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |

[ ]    *On behalf of person(s) aggrieved whose identity is* **CONFIDENTIAL** *(29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2019-00145 | Irma Quintero-Bueno,<br>Investigator | (312) 869-8059 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ]   More than 180 days have passed since the filing of this charge.

[X]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman*           3/7/19
Julianne Bowman,
District Director           *(Date Mailed)*

Enclosures(s)

cc:    **SUTTON FORD**
Nate Sutton
Dealer Principal
21315 Central Ave
Matteson, IL 60443